UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC CHARLES OLSON, | No. 2:11-cv-3088 TLN AC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| EDMUND G. BROWN, JR., | |
| Respondent. | |

Petitioner is a California state prisoner proceeding in pro per pursuant to 28 U.S.C. § 2254. The action proceeds on the petition for writ of habeas corpus filed on November 21, 2011. ECF No. 1. Respondent has filed answer, ECF No. 11, and petitioner has filed a traverse, ECF No. 13.

FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was charged in Amador County Superior Court with three counts of assault with a deadly weapon, one count of making a criminal threat, and a misdemeanor count of exhibiting a deadly weapon. A hate crime was specially alleged in relation to three of the four felony counts, and a civil rights violation was specially alleged as to the misdemeanor count. CT 1-4. Prior felony convictions were also alleged. The charges arose from an incident on February 7, 2007, in which petitioner accosted three young teenagers who were walking along a rural highway to catch a bus to church. The evidence presented to the jury established the following facts:

Petitioner first drove past the three youths in his pick-up truck as they walked along the side of the road. Petitioner honked his horn and "flipped off" the minors. The youths, 15-year old R.S., his 13-year old sister E.R., and his 13-year old friend A.S., had never seen petitioner before. A few minutes later, petitioner drove up from the rear and onto the shoulder at approximately 30 to 40 miles an hour, driving directly at the minors and almost hitting R.S. and E.R. Petitioner got out of his truck with a box-cutter in his hand, its three-inch blade exposed. He yelled at R.S., "Why didn't you tip your hat to me, you fucking nigger?"

R.S. testified that petitioner waved the knife in front of R.S. and said "he could slit my throat if he wanted to and that he knows where my family lives and he lives across the street from me and he can kill my whole family." R.S. was scared, and thought that petitioner was going to cut his throat. Petitioner repeated the racial slur and drove off.

R.S. made a note of petitioner's license plate number. As soon as the youths reached the town of Jackson and had cell phone reception, R.S. called his mother to report what had happened. She became afraid for him, but decided not to call the police because she did not think they would do anything.

Two or three weeks later, R.S saw petitioner sitting on an ATV immediately next to the driveway of R.S.'s home. Petitioner looked at R.S., pointed two fingers toward his own eyes and then pointed them toward R.S. R.S. was scared and called his mother. She decided to call the police because petitioner had shown up at their house.

The defense presented no evidence.[1]

On June 18, 2009, the jury found petitioner guilty of making a criminal threat, a felony, and exhibiting a deadly weapon, a misdemeanor. As to each of the three felony counts of assault with a deadly weapon, the jury returned verdicts of misdemeanor assault, a lesser included offense. CT 225-232.

The various sentencing allegations had been bifurcated. Following the jury verdicts, the

---

[1] In his sentencing allocution and in this habeas proceeding, petitioner has suggested that he had a preexisting "feud" with R.S.'s family and that the minors had thrown rocks at his construction equipment on an occasion previous to the offense conduct. All three youths testified that they had never seen petitioner before the incident.

2

prosecutor withdrew the hate crimes allegations and petitioner admitted two prior serious felony convictions and three prior prison terms. CT 168. On September 24, 2009, petitioner was sentenced to a term of imprisonment of 28 years to life on the felony count, and consecutive jail terms were imposed on the misdemeanor counts. CT 327.

Petitioner appealed. On March 7, 2011, the California Court of Appeal for the Third Appellate District stayed the 90-days jail sentence on the misdemeanor weapon count and otherwise affirmed the conviction and sentence. Lodged Doc. No. 7. The California Supreme Court denied review on June 8, 2011. Lodged Doc. No. 8.

Petitioner filed the instant federal petition on November 21, 2011.

## STANDARDS GOVERNING FEDERAL HABEAS REVIEW

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams, 529 U.S. at 405. A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." Williams, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. See, e.g., Williams, 529 U.S. at 397-98; Wiggins, 539 U.S. at 526-28 & 534; Rompilla v. Beard, 545 U.S. 374, 388-909 (2005); Porter v. McCollum, 130 S. Ct. 447, 454 (2009).

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court. An unreasonable determination of facts exists where, among other circumstances, the state court made its findings according to a flawed process -- for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it, or where petitioner was denied the opportunity to present evidence. See Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004). A factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding. See, e.g., Wiggins, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constituted unreasonable determination of fact).

To prevail, a habeas petitioner must establish the applicability of one of the § 2254(d)

4

exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre-AEDPA standards. Frantz v. Hazey, 533 F.3d 724 (9th Cir. 2008) (en banc). There is no single prescribed order in which these two inquiries must be conducted. Id. at 736-37. The AEDPA does not require the federal habeas court to adopt any one methodology. Lockyer v. Andrade, 538 U.S. 63, 71 (2003).

## DISCUSSION

### I. The State Court's Adjudication Of Petitioner's Claims

Both of petitioner's claims were adjudicated on the merits on direct appeal. Because the state supreme court denied discretionary review, Lodged Doc. No. 8, the opinion of the California Court of Appeal is the adjudication that must be reviewed for reasonableness under § 2254(d). See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012). Because the appellate court adjudicated the claim in a reasoned opinion, Lodged Doc. No. 7, review under § 2254(d) is confined to "the state court's actual reasoning" and "actual analysis." Frantz, 533 F.3d at 738 (emphasis in original).

### II. Trial Court's Failure To Instruct Jury On Lesser Included Offense Of Attempted Criminal Threat

#### A. Petitioner's Allegations

The petition alleges as the first ground for relief that "the (jury) did not fully understand the nature of the charge or know the consequence of the attempted criminal threat." Petition, ECF No. 1 at 4.[2] Petitioner's "supporting facts," various attachments and the traverse indicate that petitioner is attacking the trial court's failure to instruct the jury on attempted criminal threat as a lesser included offense. Petitioner contends that the court's failure "to instruct sua sponte on the lesser included offense of attempted criminal threat P.C. 664 or P.C. 1159" violated his rights under the Fifth, Sixth and Fourteenth Amendments. Id.

#### B. The Clearly Established Federal Law

It is clearly established that a defendant charged with capital murder has a constitutional

---

[2] Citations to court documents refer to the page numbers assigned by the court's electronic docketing system.

5

right to a jury instruction on a lesser included (non-capital homicide) offense. Beck v. Alabama, 447 U.S. 625 (1980). Beck addressed a capital sentencing scheme in which the jury had only two choices: convict of the charged capital crime, in which case it must impose the death penalty, or acquit. Id. at 628-29. This choice the Court found constitutionally intolerable. Id. at 627, 637. The Supreme Court in Beck relied on its Eighth Amendment "death is different" jurisprudence,[3] noting that it had "never held that a defendant is entitled to a lesser included offense instruction as a matter of due process. . ." Id. at 637; see also id. at 638 n.14 (expressly declining to decide whether there is a right to a lesser included offense instruction in the non-capital context). Since Beck the Supreme Court has not addressed the question whether there is a constitutional right to lesser included offense instructions in a non-capital case.[4]

### C. The State Court's Ruling

The California Court of Appeal addressed this issue as follows:

> Attempted criminal threat is a lesser included offense of criminal threat. (People v. Toledo (2001) 26 Cal.4th 221, 226, 230.) In Toledo, the California Supreme Court explained that a person commits an attempted criminal threat "if a defendant, … acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not actually cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat." (Id. at p. 231.) Defendant contends that the evidence that R.S. experienced sustained fear was lacking so that the trial court had a duty to instruct sua sponte on attempted criminal threat.
>
> As we explained [above], R.S.'s testimony satisfied the sustained fear element of section 422. R.S. described his intense fear during the threatening episode. The evidence further showed that R.S.'s fear continued at least until he was able to call his mother upon arriving in Jackson. Thus, R.S. endured fear of defendant for "a period of time that extend[ed] beyond what is momentary, fleeting, or transitory." (Allen, supra, 33 Cal.App .4th at p. 1156.) The

---

[3] The special procedural protections that apply in the capital case context are necessary because "death . . . is different [from any other punishment] both in its severity and its finality." Gardner v. Florida, 430 U.S. 349, 357-58 (1977).
[4] The Ninth Circuit has not extended Beck to the non-capital context. See Turner v. Marshal, 63 F.3d 807, 819 (9th Cir. 1995); Tolbert v. Page, 182 F.3d 677 (9th Cir. 1999) (en banc) (finding application of Beck to non-capital case barred by Teague v. Lane, 489 U.S. 288 (1989)).

> evidence regarding the element of fear was not sufficiently weak to require the trial court to instruct on attempted criminal threat. . . .
>
> We would affirm the judgment even if the trial court had erred in failing to instruct on attempted criminal threat because it is not reasonably probable that a result more favorable to defendant would have occurred. (People v. Breverman (1998) 19 Cal.4th 142, 178.) The evidence did not support a conclusion that R.S. had been threatened but that he did not actually experience sustained fear as a result.
>
> Defendant's theory at trial was that the minors had fabricated the entire account of the encounter on Highway 88. Defense counsel's closing argument focused on portraying defendant as lacking any motive to confront and threaten R.S. The jury was asked to reject the entirety of the minors' testimony. The evidence did not allow for a conviction for attempted criminal threat. Accordingly, the trial court did not err in failing to instruct on the lesser included offense.

Lodged Doc. No. 7 at 11-12.

### D.  Objective Reasonableness Under § 2254(d)

As the opinion on appeal reflects, the state courts did not reach the incipient federal constitutional dimension of petitioner's claim. Failure to do so cannot be considered objectively unreasonable within the meaning of § 2254(d), because the Supreme Court has not clearly established any constitutional right to a lesser included offense in a non-capital case. Where the Supreme Court has not clearly established the right asserted, § 2254(d) precludes relief. See Carey v. Musladin, 549 U.S. 70, 77 (2006). Moreover, it has long been established in the Ninth Circuit that the failure of a state court to instruct on a lesser included offense does not present a federal constitutional question and therefore cannot provide a basis for habeas relief. James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976). Even if this case were not governed by the AEDPA, therefore, relief would be unavailable.

The California Court of Appeal held that the jury was properly instructed as a matter of state law. Even if the trial and appellate courts erred, petitioner could not prevail. Errors of state law are not reviewable in a § 2254 proceeding. See Estelle v. McGuire, 502 U.S. 62, 68 (1991). Accordingly, errors in instructing the jury can support federal habeas relief only if they "so infect[] the entire trial that the resulting conviction violates due process." Clarke v. Brown, 450 F.3d 898, 904 (9th Cir.) (quoting Estelle, 502 U.S. at 72), cert. denied, 549 U.S. 1027 (2006).

The record in this case does not indicate fundamental unfairness. The issue whether R.S. experienced fear sufficient to sustain the criminal threat count was contested and argued, and the jury's verdict is supported by the evidence as discussed more fully below. As the state appellate court accurately noted, the evidence did not support an instruction for attempted threat, which would have been appropriate only if the jury could have found that petitioner had made a threatening statement but R.S. did not subjectively feel threatened.[5] Moreover, the instructions regarding the criminal threats charge had no prejudicial effect on the rest of the trial. In fact, petitioner received three not guilty verdicts on charged felonies. The jury returned lesser included offense verdicts on the three counts that were based on petitioner driving his truck at the victims, reducing these to misdemeanors. The prosecution dropped the hate crimes allegations. On this record there is no discernible unfairness, let alone an infection of the entire trial in violation of due process.

For all these reasons, petitioner's challenge to the jury instructions cannot support habeas relief.

### III. Insufficient Evidence To Support Criminal Threat Conviction

#### A. Petitioner's Allegations

As his second ground for relief, petitioner contends that "substantial evidence does not support that appellant violated Penal Code section 422." Petition, ECF No. 1 at 5. The attached points and authorities argue that the evidence of criminal threat was insufficient to satisfy due process.

#### B. The Clearly Established Federal Law

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt. United States v. Winship, 397 U.S. 358, 364 (1970). In reviewing the sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319

---

[5] The undersigned has carefully reviewed the trial record and confirms that the state appellate court accurately characterized the evidence.

(1974). If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution." Id. at 326

C. The State Court's Ruling

The California Court of Appeal addressed this issue as follows:

> Section 422 prohibits the issuance of criminal threats. In pertinent part, the statute provides: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

> Here, the record contains substantial evidence supporting the jury's conviction of defendant for issuing a criminal threat against R.S. The evidence showed that R.S. took defendant's threat seriously. R.S. testified that he actually thought defendant would cut his throat and became very scared. R.S. remained sufficiently afraid that he immediately called his mother as soon as E.R.'s cell phone got reception. R.S. communicated in such a manner that his mother immediately feared for his life. The walk to the bus stop usually took 45 minutes, and the bus ride took an unspecified amount of time. This amount of time, in addition to the duration of the incident itself, sufficed to prove that R.S. experienced sustained fear as a consequence of defendant's death threat.

> We reject defendant's contention that the evidence did not establish anything other than "momentary fear" during the incident. R.S.'s call to his mother-along with the immediate fear she developed when listening to her son-suffice to show that he remained fearful of defendant's threat. R.S.'s fear was more than fleeting and satisfied the fear element of section 422. (People v. Solis (2001) 90 Cal.App.4th 1002, 1024.)

> We also reject defendant's contention that R.S.'s recording of defendant's license plate and "continu[ing] on his way" indicated a calmness that was inconsistent with sustained fear. Section 422 does not require a victim to be so immobilized by fright that he or she is unable to function. The statute requires sustained fear, not paralysis. (§ 422.) As we have noted, R.S. took defendant's threat seriously and called his mother at his first opportunity. That R.S. continued on his way is unsurprising since he and the other minors had little choice other than to continue walking along the highway.

9

We are also not persuaded that R.S. indicated a lack of fear by calling his mother rather than the police. It is not surprising that a 15-year-old boy would call his mother immediately after a traumatic event. His mother's apprehension about contacting the police suggested that the failure to report the incident was based on fear rather than repose. In short, the evidence sufficed to prove the fear element of section 422.

Defendant argues that we are compelled to reverse based on People v. Allen (1995) 33 Cal.App.4th 1149 (Allen), In re Ricky T. (2001) 87 Cal.App.4th 1132 (Ricky T.), and People v.. Fierro (2010) 180 Cal.App.4th 1342 (Fierro). Each of these cases is readily distinguishable.

In Allen, supra, 33 Cal.App.4th at page 1156, the appellate court explained that "sustained" means a period of time that is not momentary, fleeting, or transitory. Thus, the Allen court affirmed a conviction for criminal threat when the evidence showed the victim was threatened by the armed defendant for 15 minutes until police arrested him. (Ibid.) More importantly, Allen did not hold that "sustained" fear requires the victim to suffer fear for a minimum period of 15 minutes.

Similarly, in Fierro, supra, 180 Cal.App.4th at pages 1348 to 1349, the appellate court affirmed a conviction for criminal threat upon a showing that the victim experienced 15 minutes of fear. As in Allen, the Fierro court did not hold that 15 minutes represented the minimum required to suffice for the sustained fear element of section 422. So long as the fear is more than momentary or fleeting, this element of section 422 is satisfied. (Fierro, at p. 1349.)

Even if 15 minutes were the necessary minimum for sustained fear under section 422, we would still reject defendant's contention. The evidence in this case establishes that R.S. experienced fear during the several minutes of the incident, which began with defendant driving his truck on the gravel shoulder toward the teenagers and nearly hitting them, and getting out of his truck and verbally threatening to kill R.S. and his family, after which the minors had to continue the 45- minute walk to the bus stop to catch the bus, and ride to Jackson. Such extended duration of fear suffices to meet the requirement of section 422 even if the minutes themselves cannot be precisely quantified on this record.

We find inapposite the case of Ricky T., in which "there was nothing to indicate that the [victim's] fear was more than fleeting or transitory. Indeed, [the victim] admitted the threat was not specific." (Ricky T., supra, 87 Cal.App.4th at p. 1140.) By contrast, the victim in this case testified that he actually believed that defendant was going to cut his throat. Moreover, defendant was very specific in threatening the death of R.S. as well as his "whole family." Ricky T. thus lends defendant's argument no support.

> The evidence adduced at trial sufficed to establish that R.S. experienced sustained fear within the meaning of section 422. The trial court did not err in denying defendant's motion for new trial based on insufficient evidence. And, defendant's right to a fair trial was not undermined by insufficient evidence of the criminal threat.

Lodged Doc. No. 7 at 6-10.

### D. Objective Reasonableness Under § 2254(d)

The court of appeal correctly identified Jackson v. Virginia as the controlling federal law. Lodged Doc. No 7 at 5 (citing California courts' adoption of Jackson standard). The court's application of that standard was objectively reasonable. The jury's finding that R.S. experienced more than fleeting or transitory fear was supported by R.S.'s testimony for the reasons identified by the court of appeal. The jury believed R.S., and under Jackson that credibility determination is entitled to deference. Schlup v. Delo, 513 U.S. 298, 330 (1995) ("under Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."). Petitioner's entire claim amounts to an attack on R.S.' credibility, which is not subject to post-conviction relitigation. Id., see also United States v. Kranovich, 401 F.3d 1107, 1112-13 (9th Cir. 2005) (credibility of witnesses falls within the exclusive province of the jury and may not be revisited by reviewing court).

The question of how long fear must last to sustain a conviction under Penal Code § 422 is governed exclusively by California law. Federal courts are "bound by a state court's construction of its own penal statutes." Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993). Accordingly, this court must defer to the appellate court's interpretation of "sustained fear." The only constitutional question is whether any rational juror could have found "sustained fear," as the appellate court defined it, on the basis of R.S.'s testimony. The answer to the question is an unequivocal "yes." As the appellate decision explains, California law permits a finding of "sustained fear" even where the fear lasts for 15 minutes or less. A rational juror could have found, based on R.S.'s testimony and drawing rational inferences from that testimony, that R.S. remained afraid from the moment petitioner approached him with an exposed blade on the side of the road until he was able to call his mother for help more than 45 minutes later. This evidentiary basis is more than sufficient to support the verdict.

In <u>Cavazos v. Smith</u>, 132 S.Ct. 2 (2011) (per curiam), the U.S. Supreme Court reversed a decision of the Ninth Circuit that had found an unreasonable application of <u>Jackson</u> under § 2254(d) standards.  <u>Smith</u> was a "shaken baby" case in which there was literally no evidence that the petitioner, the deceased baby's grandmother, had ever mistreated the baby; the medical opinion testimony on which the conviction rested was unsupported by objective physical evidence at trial, and was discredited as junk science in post-conviction proceedings.  If the petitioner in <u>Smith</u> cannot prevail, it is almost impossible to imagine a scenario in which habeas relief would be available on <u>Jackson v. Virginia</u> grounds under § 2254(d).  In any event, the evidentiary record in this case is much stronger than that in <u>Smith</u>, and includes direct evidence of the contested element.  Especially in light of <u>Smith,</u> petitioner's claim must be rejected.

## CONCLUSION

For all the reasons explained above, the state court's adjudication of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Accordingly, IT IS RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 4, 2013

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE